Rajiv D. Parikh, Esq.
Brett M. Pugach, Esq.
**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
Fax: (973) 533-1112
rparikh@genovaburns.com
Attorneys for Plaintiff,
New Jersey Democratic State Committee

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY DEMOCRATIC STATE COMMITTEE,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY OATH KEEPERS, an unincorporated New Jersey association,<br><br>Defendant. | Civil Action No.: _____<br><br>**COMPLAINT** |

**VOTER INTIMIDATION COMPLAINT PURSUANT TO THE VOTING
RIGHTS ACT OF 1965 AND THE KU KLUX KLAN ACT OF 1871**

Plaintiff New Jersey Democratic State Committee ("Plaintiff" or "NJDSC"), by way of Complaint against Defendant New Jersey Oath Keepers, an unincorporated New Jersey association ("NJ Oath Keepers") alleges as follows:

**INTRODUCTION**

1. NJ Oath Keepers is an affiliate of Oath Keepers, a national organization described by the New Jersey Office of Homeland Security and Preparedness ("Homeland Security") as a paramilitary organization that views the federal government as an existential threat to the rights

1

and freedoms of Americans and considers armed resistance to be necessary to preserve these rights. *See* Exhibit A to the Certification of Barbara A. Ball (the "Ball Cert.").

2. Homeland Security views Oath Keepers as a "moderate threat" to New Jersey because of fundraising and recruitment efforts in the state, involvement in protests and standoffs across the United States, and the group's ability to coordinate and organize on a national scale. (Id.) According to Homeland Security, the Oath Keepers have been actively recruiting in New Jersey since 2012. (Id.)

3. The national Oath Keepers organization describes itself as a "non-partisan" association of current and former military, police, and first responders pledged to fulfill the oath of all military and police to "defend the Constitution against all enemies, foreign, and domestic." (Ball Cert., Exh. B, at 1).

4. What this pledge translates to on Election Day is the intimidation of voters, including minority voters at polling places on the pretense (and possibly, for some Oath Keepers, the actual belief) that if not carefully watched at the polls, minorities will commit voter fraud. This

is either a pretense or a self-deception.  Comprehensive studies have found *de minimus* evidence of voter fraud.

5. In the aftermath of previous voter suppression efforts in our country's history, Congress enacted laws that unequivocally prohibit voter intimidation, including the Klu Klux Clan Act in the 1870s, and the landmark Voting Rights Act in the 1960s. Through these laws, and others, Congress prohibited threats or intimidation against any and all persons engaged in the democratic process.

6. Like other past and present unlawful attacks on the right to vote, Defendant NJ Oath Keeper's planned campaign of voter intimidation will violate the Ku Klux Klan Act of 1871 and the Voting Rights Act of 1965.

7. Immediate relief is necessary. Only five days are left until in-person voting takes place in New Jersey on November 8, 2016. Plaintiff NJSDC and untold numbers of New Jersey voters will suffer irreparable harm if the right to vote is imperiled by voter intimidation and harassment in and around polling places. As explained below, the NJ Oath Keepers are ready to follow the "Call to Action" of the national Oath Keepers "to help prevent criminal vote fraud" and, ironically, "attempted criminal voter intimidation on election day, 2016."  (Ball Cert., Exh. C, at 1).

**PARTIES**

8. Plaintiff NJDSC is a state political party committee affiliated with the Democratic Party. It is headquartered at 196 W State St., Trenton, New Jersey 08608.  The NJDSC manages the affairs of the Democratic Party in New Jersey in cooperation with the national, county and municipal Democratic organizations.

9. Defendant NJ Oath Keepers describes itself as a "Constitution Education Outreach, Public Safety, Civil Rights and Anti-Terrorist Group that is composed of Current and former Military Members, Police, Reservists, Sheriffs Officers, Firefighters, First Responders and concerned citizens that have sworn an oath to defend and uphold the Constitution of the United States." (http://www.njoathkeepers.org/.)  The organization's website does not provide a mailing address, but its page on the national Oath Keepers website provides phone numbers to contact in the 908 and 201 area codes.  (https://www.oathkeepers.org/new-jersey/.) The organization is state-wide, with positions for coordinators in all 21 New Jersey counties. (http://www.njoathkeepers.org/members/.)

10. Upon information and belief, Mr. Edward Durfee, the regional director of Oath Keepers, who is also the Secretary/Treasurer of NJ Oath Keepers, is a resident of Bergen County, New Jersey.

**JURISDICTION AND VENUE**

11. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under federal law, specifically Section 2 of the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3), and Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b).

12. Personal jurisdiction exists over NJ Oath Keepers because it has a substantial presence in this State and threatens to cause harm or tortious injury by an act in this State.

13. The NJDSC has standing in this action because it is supporting many candidates for office in the election to be held on November 8, 2016, including Democratic candidates in the Presidential, House, and numerous statewide elections. The Committee is threatened with immediate and irreparable injury if the voter intimidation campaign by NJ Oath Keepers succeeds in disrupting or changing the results of the election. The NJDSC has standing on behalf of itself and its supporters.

14. Venue is proper in this district under 28 U.S.C. § 1391(e) because significant events giving rise to this action threaten to occur in this district.

15. The allegations herein justify immediate relief to prevent irreparable harm. An injunction against the NJ Oath Keepers' planned intimidation tactics is the only way to protect New Jersey voters from harassment, threats, or intimidation that could discourage them from voting in the upcoming election.

## FACTUAL ALLEGATIONS

### I.  CONGRESS HAS REGULATED VOTER INTIMIDATION FOR MORE THAN A CENTURY IN RESPONSE TO POLLING PLACE VIGILANTISM

16. Since its initial passage in 1965, Congress has renewed the Voting Rights Act, a historic piece of legislation which, among other things, sought to combat intimidation in elections and registration efforts in the Jim Crow South, including the killing of black and white activists seeking to register African-Americans to vote. To this end, Section 11(b) of the Voting Rights Act prohibits actual or attempted "intimidation," "threats," or "coercion" against a person, either "for voting or attempting to vote" or "for urging or aiding any person to vote or attempt to vote."

17. Section 11(b) also authorizes private suits against private actors, even in the absence of any action by a state or state official.

18. Almost a century before passage of the Voting Rights Act, Congress passed the Ku Klux Klan Act of 1871 (the "KKK Act") to protect the voting rights of recently freed slaves, by, among other things, protecting them and others from violence and harassment in exercising their fundamental voting rights.

19. The KKK Act, 42 U.S.C. § 1985(3), provides for damages and equitable relief "if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of . . . an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy."

20. The KKK Act further provides that an action will lie against the co-conspirators so long as "one or more persons engaged" in the conspiracy "do, or cause to be done, any act in furtherance of the object of such conspiracy."

21. Congress has thus enacted two broad statutes to prevent voter intimidation. As courts have made clear, one violates Section 11(b) by following voters around, standing behind them taking notes, following them into the parking lot, or loudly discussing voter fraud laws in their presence. Similarly, invasions of physical space and intimations of possible future violence, prosecution, or legal action based on a voter's presence at the polls also constitute unlawful voter intimidation.

22. And even if an individual does not directly participate in those activities, the KKK Act makes it unlawful to conspire with others to promote, organize, and facilitate such efforts.

## II. THE NATIONAL OATH KEEPERS ORGANIZATION HAS ISSUED A "CALL TO ACTION" TO HAVE ITS MEMBERS, INCLUDING THOSE IN NEW JERSEY, INTIMIDATE VOTERS ON THE PRETEXT OF PREVENTING NON-EXISTENT VOTER FRAUD.

23. The Oath Keepers' "Call to Action" issued on the group's website on October 25, 2016, says:

> Calling all Oath Keepers members! We need you to help prevent criminal vote fraud and attempted criminal voter intimidation on election day, 2016. Therefore, we call on you to **form up incognito intelligence gathering and crime spotting teams and go out into the public on election day, dressed to blend in with the public**, without any Oath Keepers hat or T shirt on, and **with video, still camera, and notepad in hand**, to look for and document suspected criminal vote fraud or intimidation activities, by any individuals, groups, or parties, and then report those incidents to your local police. (Ball Cert. at 3) (emphases added).

24. Voter intimidation efforts aimed at suppressing minority voters have frequently been ostensibly aimed at combatting voter fraud. In fact, this Court held in 2009 that, "[v]oter intimidation presents an ongoing threat to the participation of minority individuals in the political process, and continues to pose a far greater danger to the integrity of that process than the type of

voter fraud the RNC is prevented from addressing by the Decree." *Democratic Nat'l Comm. V. Republican Nat'l Comm.,* 671 F. Supp. 2d 575, 578-79 (D.N.J. 2009) (Debevoise, J.).

25. The Oath Keepers Call to Action invites the very conduct that is prohibited by the Voting Rights Act and KKK Act.

26. In a video posted on the Oath Keepers website along with the Call to Arms, Oath Keepers founder Stewart Rhodes says that Oath Keepers will "hunt down" voter fraud.

27. The Call to Action advises members to film and photograph surreptitiously so as not to open themselves up "to accusations that you are attempting to intimidate voters by openly filming them, despite that not being your intention or purpose at all." (Ball Cert., at 5). Inasmuch as voter fraud is essentially non-existent, Oath Keepers' suggestion that voter intimidation is not the purpose of this surveillance rings hollow.

28. NJ Oath Keepers has spread and publicized the Call to Action. Edward Durfee, a leader of the New Jersey chapter, "tweeted" a link to the Rhodes video on or about October 26, 2016, the day after it appeared on the Oath Keepers website. (Ball Cert., at Exh. F).

29. Just a few days ago, on or about October 29, 2016, the NJ Oath Keepers Facebook account posted a link to the Call to Action. (Ball Cert., at Exh. G). We do not know where the NJ Oath Keepers plan to take videos and photos of New Jersey voters and make their notes, but the intention to surveil New Jersey polling places is manifest, and it is a fair conclusion that the polling sites of interest to Defendant will be located in high minority population voting districts.

30. NJ Oath Keepers has also demonstrated a particular interest in the House of Representatives election in New Jersey's Fifth Congressional District.

31. For example, Mr. Durfee circulated invitations to an October 1, 2016 "meet and greet" event featuring the incumbent in the Fifth District, Rep. Scott Garrett. (Ball Cert., at Exhs. H and I).

32. Tickets for the event cost $20, payable to the American Bedrock Foundation ("ABF"). (Id.) Mr. Durfee later told *Bloomberg Businessweek* that ABF "is basically the fundraising arm for the Oath Keepers and other pro-Constitution groups." During the event, according to *Bloomberg Businessweek*, Garrett called Durfee an "unsung hero" and told the audience, "What I need from you is your blood, sweat and tears. . . . We need the grass roots to come on out." (Id.)

33. The Fifth District Race has also been tarnished by anti-Semitic rhetoric linked to followers or members of Oath Keepers. For example, one post circulated via the Oath Keepers' Facebook account asserts that "jews/communists have taken the teaching of the Constitution out of our schools." (Ball Cert., at Exh. J).

34. Indeed, an anonymous flyer was circulated on November 2, 2016, within the Fifth District, which depicts Garrett's opponent, Josh Gottheimer, with hand-drawn horns saying that "big media owns me," invoking both ancient and contemporary anti-Semitic slanders. (Ball Cert., at Exh. K).

## COUNT ONE: KU KLUX KLAN ACT

35. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

36. Defendant NJ Oath Keepers in conjunction with the Oath Keepers, have called on their members to descend on polling places in New Jersey and elsewhere, allegedly to monitor for voter fraud but in actuality to intimidate minority voters.

37. Absent declaratory and injunctive relief, voters will be subjected to intimidation and harassment at the hands of vigilante "poll watchers" and "ballot integrity" volunteers on Election Day, and many may suffer unwarranted delays or denials of their right to cast a ballot in the approaching elections.

38. Plaintiff is entitled to a declaration that Defendant together with its members and its national organization have violated the Ku Klux Klan Act through their conspiracy to intimidate voters, and Plaintiff is entitled to an injunction enjoining Defendant and its members from any further activity to advance their conspiracy.

## COUNT TWO: VOTING RIGHTS ACT

39. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

40. Defendant has called for polling-place activity that is objectively likely to instill fear in voters. Such intimidation includes racial targeting, invasions of physical space, and other forms of menacing, including the threat of reporting innocent persons to the authorities.

41. This planned course of intimidation violates Section 11(b) of the Voting Rights Act, which prohibits all actual or attempted "intimidation," "threats," or "coercion" against a person, either "for voting or attempting to vote."

42. Absent declaratory and injunctive relief, New Jersey voters will be subjected to intimidation and harassment by vigilante "poll watchers" and "ballot integrity" volunteers on Election Day, and many may suffer unwarranted delays or denials of their right to cast a ballot in the approaching elections.

43. Plaintiffs are entitled to a declaration that Defendant and its members have violated Section 11(b) of the Voting Rights Act.

**COUNT THREE: INJUNCTIVE RELIEF**

44.     Based on Defendant's above-described planned violations of law, Plaintiff is entitled to an injunction enjoining Defendant and its members from any and all planned voter-intimidation activities. This activity includes but is not limited to:

   a. Funding, encouraging, or otherwise supporting, individuals who are not officially appointed challengers under New Jersey law to be present at or around polling places or voter lines for the purpose of engaging in poll watching activities;

   b. Monitoring polling places, or permitting, encouraging, or assisting individuals to monitor polling places, if the proposed monitor does not meet the statutory requirements for service as a challenger;

   c. Gathering or loitering within one-hundred (100) feet of a polling place, or permitting, encouraging, or assisting any individuals to gather or loiter within one-hundred (100) feet of a polling place, unless such person is an authorized challenger permitted for said election district;

   d. Questioning or verbally harassing voters or prospective voters, or training, organizing, or directing others to do the same, for the purpose or with the effect of intimidating voters or prospective voters;

   e. Following, taking photos or video of, or otherwise recording voters or prospective voters, those assisting voters or prospective voters, or their vehicles, or training, organizing, or directing others to do the same.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff request that this Court:

a)     Declare that the harassment or intimidation of voters at or outside of the polls in New Jersey during the 2016 Election based on unsubstantiated beliefs in supposed voter fraud—including taking video or photographs of persons, reporting persons to the authorities, questioning persons waiting to vote, making threats or suggestions of legal or criminal action, or any other form of intimidation—is contrary to law.

b)     Temporarily restrain and enjoin any such conduct through November 8, 2016.

    c)      Publicize the Order to all law enforcement and elections officials in advance of Election Day.

    d)      Grant such other relief as this Court may deem proper.

Respectfully submitted,

By:    s/ Rajiv D. Parikh
        Rajiv D. Parikh, Esq.
        Brett M Pugach, Esq.
        **GENOVA BURNS LLC**
        494 Broad Street
        Newark, New Jersey 07102
        Tel: (973) 533-0777
        Fax: (973) 533-1112
        RParikh@genovaburns.com
        *Attorneys for Plaintiff,*
        *New Jersey Democratic State Committee*

Dated: November 3, 2016

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to L. CIV. R. 11.2, the undersigned counsel for Plaintiffs hereby certifies that this matter in controversy is not the subject of any action pending in any court, or of any pending arbitration or administrative proceeding.

By:    s/ Rajiv D. Parikh
        Rajiv D. Parikh, Esq.
        Brett M. Pugach, Esq.
        **GENOVA BURNS LLC**
        494 Broad Street
        Newark, New Jersey 07102
        Tel: (973) 533-0777
        Fax: (973) 533-1112
        RParikh@genovaburns.com
        *Attorneys for Plaintiff,*
        *New Jersey Democratic State Committee*

Dated: November 3, 2016

21726/002/13784218v2